We'll have a brief recess before finishing for the day. And we begin with Hassen v. Ruston Louisiana Hospital Co. LLC. Ms. Hill. I reserve five minutes for rebuttal, please. This is a discrimination case with a nurse who was always hired part-time and never hired for a full-time position despite having higher qualifications than the other applicants. We have three claims. One for the actual hiring process, the second one for not giving her a full-time position after she was hired, and the third upon her termination. The court did find a prima facie case. So, you know, she's a black female, adequate job performance, had adverse employment actions under circumstances that implied discrimination. The court found that essentially. Our argument is the business reason provided by the employer we think was inadequate to overcome the issue of pretext. So with our claim for hiring, there were the defendant says we hired, the appellee says that we hired. We interviewed three women the same time, the same day. It may have been a day or two apart, but hired the same day. And they're saying that Ms. Hassen never applied for an online, a full-time position. The other two women had finished nursing school two months before the interview. Ms. Hassen had been out two years still looking for a full-time job. They have online applications. Her application was there. And the defendant shows us an interview sheet that's written at the top in the interviewer's hand, PRN, which is part-time. Ms. Hassen says I applied for a full-time job. And her online application says essentially I'll take anything, full-time, part-time, variable, movable, whatever the options were, but she insists that she applied for a full-time position. Our problem is the defendant says she never applied for a full-time position. It was always part-time. But that's not on the interview sheet. That's not on the sheet that was provided for us. That's the only place that shows PRN, which is part-time. And the interview sheet they provided was for Ms. Hassen, but not for the other two applicants, which makes us suspect. So they're saying that she applied for a part-time job, and that's not on the interview sheet, and it's not indicated anywhere except for the actual hiring documents. So we think that once the business reason was offered and she comes back and says, well, we've got this, I've got this online application, and then the defendant shows us Ms. Hassen's interview sheet but does not show it for the other two women, then they've actually left out some evidence that we think would be useful. Now, I understand that for the business reason, you just need to articulate a reason. But when there is a, it comes out to be he said, she said, then we submit that the court should have construed any ambiguity in favor of Ms. Hassen. We have documents that are in the hands of the appellant that we never, in the appellee that we never got, clearly showing this interview sheet. It's not her hands writing on the interview sheet. Therefore, we think that she should have been, it should be found a discriminatory action. So what is the, you know, let me, what specifically is the evidence that she applied for a full-time position? I know she said, you said basically she said she'd take anything. But the specific evidence that she applied for a full-time position is what? Now tell me. They use these online applications. Right. And we have the online application for all three applicants. But it just says essentially what I told you. It's a resume, and it says I'm available, hers says I'm available full-time, part-time. It shows that she applied for a full-time position, but it does not show that job number on her application, on the interview sheet. So she applies for a job. She's called to come in, and she's interviewed. And sometime later, or maybe even that day, they weren't chosen until a month later. So I suspect that the writing on the interview sheet wasn't even done that day. But the interview sheet is handwritten, a job number, and it's handwritten P-R-N. Well, her online application essentially says I applied for a job, and that job number is there. But it doesn't say whether it should be full-time or part-time. Okay. And that's not done until after the interview. She insists that, you know. So the problem from your standpoint is that they didn't give a reason why they didn't hire her in preference to these two women who were brand new, you might say. I mean, just graduated from nursing. One of the persons hired had a temporary license. It's really just a matter of protocol. I think a time period lapsed before you get your full license. But one woman did not even have that. And yet she was hired over Ms. Hasson, who had two years of experience working part-time at different places. Essentially the same thing with the failure to give her a full-time position once she was hired. A month later, she saw two openings, and she talked to her supervisor about it. And the supervisor says, you're not qualified. I want to switch to full-time. She's told you, you're not qualified. And at summary judgment, we lost on summary judgment, our police says she never talked to us about that. Well, again, we got the he said, she said. Well, she says, I'm looking for a full-time job. I'm working on the job. And then a month later, she does, a month, maybe two months later, she does get a full-time job someplace else. She's looking for a job. So if the word of each person against the other, then it just seems to me that you should construe it in favor of Ms. Hasson. Now, for the termination, we'll talk about. Ms. Hasson says she got a full-time nursing position elsewhere. I didn't. Ms. Hasson says that she got a full-time nursing position elsewhere, correct? She did, a month later. And the hospital says that it has let go similarly situated white nurses who have obtained full-time employment elsewhere. And what's your response to that? Ms. Hasson identified two people who she knew had full-time jobs elsewhere and continued to work PRN for a while. At least one of them did. I do have information that one of them essentially resigned afterwards. But I don't know that the other one did within our time frame of this case. The problem is there is a PRN contract that was important enough to have the applicant sign when she was hired, level one, two, three. And she was at level one, one shift a month. That's all she had to do. She had already, she was purged from that list in June. She had already complied with the June requirement. And they're telling her you can't work two jobs. Well, she'd already done that. She was hired sometime in May. She fulfilled her June contract. And then she was asked, she actually turned down, she was actually asked to work another weekend. And then it was withdrawn. So she, the record shows that she sent a text message back saying, yes, I'll be able to come in. And then it was withdrawn. So she, there was no reason to purge her, that's the point. Now, the appellee says, well, we need all these work days that's going to interfere with her work day. But that's not the requirement for her PRN. She only had to do one shift a month, which could have been any weekend, any off hours, her off days at the other job. Or, you know, it may have been worth it to her to take a day off. So the court says, well, it makes sense that you can't hold a full-time job someplace and then come work at another time. You'd be too tired. But that's not the requirement for the PRN. If other people could work full-time, the appellee has not given us any schedules to show this is the way we handle the schedules. And we look at your schedule to determine whether or not we can hire you part-time. The director, she was in the emergency room. So the director of the emergency room says, I need all these weekdays filled. Well, if they had all these times available, it seems to me that they could have hired Ms. Hassen full-time. There are a lot of ways the jury could have looked at this. And I think that it was they should have construed the facts in favor of Ms. Hassen rather than terminating her automatically because she had taken a full-time job. All right. Thank you, Ms. Hill. You've saved time for rebuttal. Thank you.  Good morning, Your Honors. Craig Watson and Amanda Plesher here today on behalf of Northern Louisiana Medical Center. Your Honor, I would like to step through a little bit and be able to answer some of the questions posed by Judge King and by Judge Willett. This case is a classic textbook case where the individual can show that she fits in a protected class, that there was some adverse action. But where she fails and what the district court noted is the routine granting of summary judgment where the plaintiff, such as in this case, fails to meet her burden of persuasion on the protectual element. And that's what all this case is about, for Your Honors, is whether or not at the end of the day, after the discovery, after the evidence, after two years of litigation, there is any concrete evidence of any discriminatory, animus, or intentional discrimination that she can controvert our burden of production. And so I'd like to take this court briefly through exactly what happened here. We did have a situation here where we had nurse positions that were opened up. There were three nurses that applied for those positions. Ms. Hassan was one of them. Ms. Hassan did apply for a full-time position, but she is the only nurse that identified herself as also having availability for PRN status. So when the interviews were conducted, ultimately, the decision was made to place Ms. Hassan in the PRN status which she said she was available to work. The other two individuals, yes, did they have less experience? Absolutely. But if you look at the pay, which is always dispositive of whether or not there could be some discriminatory animus, the one that just came out of law school that got the full-time job was paid $19 an hour. The one that was a paramedic that had one year of experience was paid $20.50 an hour. Ms. Hassan, who had the three years of experience, was given a rate of $26 an hour to work that available rate, along with $5 in differential pay. She indicated she had availability, and she was placed in the position that was available for her. So she did meet the prima facie case originally with respect to whether or not there were other individuals, but she didn't sit in the exact same place. She was given a higher rate of pay, and she was afforded the opportunity to work at the job. Now, she may come in and dispute that and say, well, I thought I was getting a full-time job. Well, guess what? There is some onerous that placed on the individual here. She admits that there was never a discussion when she was interviewing as to whether or not this was a full-time position. The undisputed testimony that you have in the record from the director who was providing the interview said, I believe she was applying for the PRN position. And in her deposition, she also says that the PRN form that she was reviewing at the time of the interview says PRN on it. And Ms. Hassan doesn't avail herself of any opportunity to say, well, wait a minute. Why am I being offered PRN when I applied for full-time? She never asked the question. Ms. Hill points out that they never saw the interview sheets for the other two women who applied. Can you explain what that circumstance was? A lack of moving forward with the discovery, Your Honor. We produced the personnel files of the other two individuals. There was a motion to compel. It was granted in part and denied in part. And she never preceded or pursued any additional documentary evidence that was before the court. And so that's just a lack of proceeding with respect to the discovery. We produced everything that was required, both in the interrogatories and the request for production of documents, as well as full compliance with the order of the court. This matter was originally set for summary judgment. She filed a motion to compel saying we didn't finish outstanding discovery. We produced those. We proceeded. So what's not before this court is evidence that you cannot look at now because she failed to proceed with it. Let me — you speak very fast. Sure. Okay, you might want to slow down just a tad. Now, tell me something. When they conducted the interview of these three candidates, what position did the hospital think it was interviewing for? An emergency room nurse, that they had three positions available, two of which were going to be full-time positions and one of which was going to be an as-needed PRN position. And so Ms. Hassan indicated she had the availability for the PRN nurses. The others did not, and she was afforded that right. Where she fails in this is showing that that decision, just because you had white applicants given it, doesn't mean that she's met her burden of persuasion of showing that it was pretextual. Our undisputed evidence was we hired her because we thought that she had the PRN availability and we wanted her to fill that role. If she wanted the full-time position and only wanted the full-time position, she should have spoke up and said something, and then she never did. Where is there in the record to indicate that the other two were not also available for PRN? It's not in the record, Your Honor. The record for her, Ms. Hassan's particular — So we can't consider what you just told us about that, that it's not in the record? Well, what's in the record is Ms. Hassan's record doc 136, which shows that she had PRN availability. The other nurses did not. They were hired for the position for which they — No, what I'm asking you about is the availability of the other two for PRN, and you first told us that they were unavailable. Then when I asked you the question, you said, well, that's not in the record. So is it in the record or not in the record as to whether the other two indicated an availability for PRN? It is not in the record, and I would — All right, so you shouldn't have told us that. Well, I would just submit to you, Judge Smith, that, again, we produce a burden of production. It's limited on a legitimate articulate reason for the nondiscriminatory justification. If Ms. Hassan wanted the opportunity to persuade this court that that decision is not correct, she could have taken the depositions of the human resources director. She could have subpoenaed additional documents. She could have gotten that — All right, well, the answer to my question is it's not in the record. It is not with respect to that. What we have is Ms. Hassan's. Moving forward with respect to the termination process here, which the court found that there was no legitimate — that there was no prima facie case, Your Honor, this — this is even clearer that there's no discriminatory animus here. We didn't set the separation into motion here. Ms. Hassan went out and got other employment, came to the emergency room director, and said, I have a full-time job working from 9 to 5. The PRN shift that's testified to was to be worked for the day. They needed daytime people to fill that up. Ms. Hassan, in fact, when she disclosed that information to us, she was already scheduled to work multiple shifts. She had to be pulled off the schedule. We had to reschedule and get other individuals to work those shifts. So what happens is in this particular system, and whether you believe it's fair, right, or wrong, there's certain nurse positions that are assigned requisite numbers. In order to fill a new nurse position, when a nurse is no longer able to fill it, they have to have somebody else reapply, and that's exactly what happened here. She was purged from the system when she indicated she could no longer work during the times for which we needed the PRN filled. And what's notable is she was told that she was purged from the system, but if her situation changed and she could fill those jobs, she was eligible to be rehired. And that's just a system that's a business decision. That's the way the hospital runs their system. Ms. Hill made reference to some of the others who also had full-time positions at the time and were treated differently? She did make reference to that, but I would submit to you, Your Honor, that Record Doc 280 shows a purge list in addition to we exhibited in our brief multiple individuals that were treated exactly the same as Ms. Hassan, which is that when they are unable to fill the obligations that's needed, they are effectively put in the system as resigned, and then they are allowed to rehire and apply for a position. And that's what happened to whether you were white, whether you were black, whether you were male, whether you were female, full-time or part-time. And so we submit to you that there is simply not a scintilla of evidence of any racial discrimination in this case whatsoever. You simply cannot say that we had two white applicants who got jobs and therefore I was discriminated. She didn't show anything else to this court other than conclusory allegations that she subjectively believes she was treated this way. She never availed herself of any opportunity to come back. She, as we sit here today— As I understand, I mean, I understand her case with respect to the initial hiring. The other two candidates were arguably less qualified than she was. So there's three applicants for three positions, right? Yes. And they give her the PRN position, and they say that's because she didn't make it clear that she had to have full-time work, although she applied for full-time work. So how is it that she's failed to make a prima facie case? Again, run that by me one more time. Yes, sure, Judge King. I'm not disputing the fact that she can make the prima facie case on that element. But what we have is we have the burden of production, which we've shown, which says that when Sandy Goss, the emergency room director, was interviewing for the position, she believed that Ms. Hassan was applying for, had applied for, and did apply for PRN availability, and she was placed with that requisition number, which is the 136 in the record doc. Ms. Hassan never said, I need full-time employment, I want full-time employment. She was handed a PRN agreement, and she didn't say, wait a minute, I'm confused, time out. I applied only for full-time. She never afforded herself. So we had no other information that somehow this was the only position, bless you, that she wanted. And so I'm not saying she's not meeting the prima facie. I'm saying we produced our burden of production, and she has not done anything else to persuade this court or certainly not the district court that there was any racial bias or animus that could support the idea that summary judgment should be dismissed, that summary judgment should not have been granted in this case. And so for those reasons, along with the look at the pattern here, you know, we did have African-Americans. During the very limited six-month period of time where Ms. Hassan worked for us, there were five other African-American nurses that were hired at the same time, three in the med-surg unit, two of them were PRN, I'm sorry, three of them were PRN, and two of them were full-time. And so there's simply no evidence. Ms. Hassan even admitted in her deposition testimony, well, while you were working there, did you have any issues? Did you feel that you were being treated differently? And she said no. So this isn't a pattern or a practice of some sort of racial bias or discrimination against this individual. We have an individual that said she had PRN availability. She was hired for PRN. Then she worked there without incident. The hospital would have Ms. Hassan come back and work today. We've always said that. She has the free availability to apply for a position as we sit here today. And then she took the initiative to go ahead and get a full-time job, which would necessarily conflict with the needs of the hospital, and so she was purged with the ability to rehire. She was treated exactly the same as other individuals in that circumstance. And for those reasons, we say that the court, the district court, was correct in finding that Ms. Hassan cannot defeat the burden of production through persuasion. The record shows, I take it, that if you're working full-time for the hospital, let's see, you can, they will not hire someone who had PRN who has a full-time job elsewhere. Is that what the record shows? It does not, Your Honor. There are circumstances where individuals can be both PRN and they can have full-time employment elsewhere. The specific situation, which was testified to in this case, was that the needs of the hospital at this time were for full-time daytime work. I'm sorry, PRN daytime work. And when her schedule was 9 to 5 during the daytime, she had to be pulled off. So she gave notice that she was going to be working on June 4th, that she needed full-time work. She was already scheduled to work on the 6th, the 7th, the 8th, and the 9th, the daytime shifts. We had to pull her off of those shifts because she could no longer work them. And then we needed to fill somebody that could then work those shifts, and so we needed somebody else to reapply for those shifts. If Ms. Hassan's full-time employment changed, she was eligible for rehire. It's also of note to this court that one of the comparators that applied for the job, Ms. Talton, she was terminated and is not eligible for rehire. So it just shows that she wasn't able to produce her burden of persuasion of showing that the actions in this case were protectual. And so for those reasons, we would respectfully request that this panel affirm the district court's judgment in this. Thank you. Okay. Ms. Hill, you've saved time for rebuttal. Two points. First of all, we don't know what went on at the interview. It's obvious to me that she was not given the job at the interview because she was hired a month later. The interview was in January. She was hired in February. And the notes, we don't know when the notes were made on that interview sheet, whether it was made at the interview or made at the time of the decision or when it was made. So we're talking about our application for a part-time job. Ms. Hassan says we never discussed this. And if you know you applied for a full-time job, why would you discuss a part-time position? Why would you ask all these questions? Yes. So getting back to the discovery, on the question of the interview sheets for the other two applicants, Mr. Watson said that you never followed up by asking for those in terms of any kind of motion to compel. Can you walk us through what happened on that? I asked for all the information on those two applicants. In fact, I asked all the information on about three or four applicants, three or four nurses who were working full-time, and that's all they gave me. There was no follow-up necessary. Why should I assume that they did not give me all the forms? They did not, but they didn't provide them. I asked for the same thing for everybody, including Ms. Hassan, except I didn't ask for the entire personnel record, but I asked for all the applications, the warnings, the performance evaluations, those kind of things. So it should have been part of it. The other thing is the online application, the way it works is once they apply, you're notified when there's an opening. So Ms. Hassan has to be notified. She's not just going through scrolling every time looking for a job. She's getting an e-mail notification that there's a job available. One thing the court kept talking about was no comparators. So we're talking about she can compare herself to these two white women who were hired, but she can't compare herself to other people who were terminated, who were purged because they had full-time jobs. But then the defendant comes back and says, well, we have five on the staff. The hiring sheet they showed us was they hired five out of 82 people. That's point zero. That's 6 percent, 6 percent black. The court erred in focusing only on comparators to show similar situations, but it can also be an indication of discrimination of preference. What is your response to Mr. Watson's assertion that your client was paid, as I recall what he said, about $6 an hour more? She had no benefits. She had no full-time job. She was only required to work one shift a month. That's the PRN, one shift a month. She's got to work part-time someplace else to pick up her until she can get a full-time job. So she would rather have a full-time job with benefits. Yes, she got a little bit more money. I think the PRN contract calls for the payment in order to get people to work part-time. So that's why that happened. But she would have preferred a full-time job. There's nothing in the record to say that she was on day shifts until she left. She worked sporadically. We have the attendance sheets. And she worked sporadically until she got a full-time job. And then that last month she was asked to work the weekend, and she agreed. That's what the text messages say. She agreed, and then an hour or two later they said, oh, we've got somebody else to cover it. We don't need you. Thank you. She checks the shift, the schedule for the next few weeks and discovers she's not there, especially she calls Ms. Goss, her supervisor, and that's when she discovers she's been purged. If it's so important to have them sign a spreadsheet when they're hired, why aren't they all given notice that you're going to have to work a specified number of shifts? Why aren't they given that notice and put that in writing? Was she ‑‑ is it true that she was unavailable for the 9 to 5 daytime shift? That's the point. That's not in the record. The only thing in the record is she had not turned down a shift. She was not called for a shift. But she had already worked to June. She only needed to do one shift. And the shift, you know, the shifts vary. They may be four hours. It's usually a minimum of four hours. But it could have been 12 hours. So she didn't have to work a full 12 hours. Your time has expired. If you'd like to close with one or two sentences, you may. If there's anything else you want to say. No. All right. Thank you. Your case is under submission.